**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 16-78 (JRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| DEANNA MAE ALAMA, | |
| Defendant. | |

---

Allen A. Slaughter, Jr., and James S. Alexander, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for respondent.

Deanna Mae Alama, No. 20606-041, FCI-Waseca, P.O. Box 1731, Waseca, MN 56093, *pro se* defendant.

Deanna Mae Alama brings a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 due to ineffective assistance of trial counsel. She also moves to strike the affidavit of her counsel, Bruce Rivers. Alama's allegations, even if taken as true, do not warrant an evidentiary hearing because they are conclusory, contradicted by the record, or fail to establish grounds that warrant relief. Therefore, the Court will deny Alama's Section 2255 motion without an evidentiary hearing. The Court will also deny Alama's motion to strike Rivers's affidavit; however, the Court will not consider the affidavit in ruling on Alama's Section 2255 motion because the affidavit is unsigned, undated, and not certified as true and correct under penalty of perjury. Accordingly, the Court will deny Alama's motion to file a supplemental pleading as moot.

1

**BACKGROUND**

Starting in 2011, Alama worked as a DEA-licensed nurse practitioner prescribing controlled substances. (Plea Agreement ("Plea") ¶ 2(a), Apr. 13, 2016, Docket No. 13.) After working at several clinics with different physicians, including Dr. Bangston, Dr. Thorson, and Dr. Romano, Alama opened her own pain management clinic. (Def.'s Supp. Mem. at 1-2, Nov. 8, 2017, Docket No. 45.) In April 2016, Alama pled guilty to one count of distributing oxycodone (a Schedule II controlled substance) other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). (*See* Plea ¶ 1.) The Court sentenced Alama to 48 months imprisonment. (Am. Sent. J. at 2, Feb. 13, 2017, Docket No. 43.)

Alama now moves to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 on numerous grounds, all of which she alleges constitute ineffective assistance of counsel: (1) her plea was involuntary and unknowing; (2) the charge against her was void for vagueness; (3) her plea agreement included a FOIA waiver; (4) her counsel's investigation was insufficient; (5) her counsel misled her as to the consequences of a guilty plea; (6) she was selectively prosecuted; and (7) her counsel failed to request a downward departure under U.S.S.G. § 5K1.1 for substantial assistance to the United States and failed to enforce the United States' promise to file such a motion. (28 U.S.C. § 2255 Mot. at 4-5, 7, Nov. 8, 2017, Docket No. 44.) Alama also moves to strike an affidavit written by her trial counsel, Bruce Rivers, (Mot. to Strike at 1, June 7, 2018, Docket No. 62), and to file a supplemental pleading, (Mot. to File Suppl. Proceedings, July 12, 2018, Docket No. 64).

# DISCUSSION

## I. STANDARD OF REVIEW

### A. 28 U.S.C. § 2255

Section 2255 permits a prisoner held in federal custody to move a sentencing court to "vacate, set aside or correct" a sentence. 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

An evidentiary hearing must be held on a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). When a factual dispute exists or a credibility determination is needed, an evidentiary hearing is required. *Thomas v. United States*, 737 F.3d 1202, 1206-07 (8th Cir. 2013). A court may deny an evidentiary hearing if (1) the petitioner would not be entitled to relief even if the court accepts all her allegations as true or (2) her allegations cannot be taken as true because they are contradicted by the record, inherently incredible, or conclusory. *Id.*

### B. Ineffective Assistance of Counsel

A defendant has the right to effective assistance of counsel at all critical stages of a criminal proceeding, including plea agreements. U.S. Const. amend. VI; *Missouri v. Frye*,

566 U.S. 134, 140 (2012). To demonstrate ineffective assistance of counsel, Alama must make two showings: (1) counsel's performance "fell below an objective standard of reasonableness" and (2) counsel's deficient performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).

As to the first showing, Alama must show that – under the circumstances – counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690. This determination involves a delicate balance. On the one hand, the Court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id*. On the other hand, the Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. Because "[j]udicial scrutiny of counsel's performance must be highly deferential," Alama must overcome the strong presumption that counsel exercised reasonable professional judgment. *Id*. at 689.

As to the second showing, Alama must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* In the context of plea agreements, the prejudice showing requires Alama to demonstrate that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

4

"[D]ispositions by guilty plea are accorded a great measure of finality" and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 71, 74 (1977). Therefore, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id*. at 74.

## II. MOTION TO STRIKE

Alama moves to strike the declaration of her trial counsel, Bruce Rivers, which was filed in support of the United States' opposition to Alama's Section 2255 motion. Alama alleges that Rivers's unsworn declaration fails to comply with 28 U.S.C. § 1746 and other rules. Unsworn affidavits or declarations filed to support or oppose motions "must be signed, dated, and certified as true and correct 'under penalty of perjury.'" *Banks v. John Deere & Co.,* 829 F.3d 661, 668 (8th Cir. 2016) (citing 28 U.S.C. § 1746). Rule 7(a) of the Rules Governing Section 2254 and Section 2255 Proceedings in U.S. District Courts permits the court to require that "materials be authenticated" when parties expand the record. Rules Governing § 2255 Proceedings, Rule 7 (2010).[1]

Rivers's declaration is unsworn, unsigned, undated, and not certified as true and correct under penalty of perjury. The Court will not, however, strike the declaration as no such action is authorized by the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, or the Local Rules for the U.S. District Court for the District of

---

[1] Available at http://www.uscourts.gov/sites/default/files/rules-governing-section-2254-and-section-2255-proceedings.pdf.

Minnesota.  *Carlson Mktg. Grp., Inc. v. Royal Indem. Co*., No. 04-3368, 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006); *see also Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 950 (D. Minn. 2018).  Nevertheless, the Court will not consider Rivers's declaration in deciding Alama's Section 2255 motion.[2]  *See Banks*, 829 F.3d at 668.

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

### A.   Involuntary/Unknowing Plea

Alama argues that her counsel was ineffective because he advised her to plead guilty to innocent conduct, which, under the law, would make her plea involuntary and unknowing.  Alama alleges that Center for Disease Control ("CDC") recommendations indicate that clinicians may – and in some cases should – continue opioid treatment despite patients' failed urine tests.  Thus, she argues that her conduct was in line with professional standards at the time of her actions or, in the alternative, that she acted in good faith, which is a defense to the charge to which she pled guilty.

The plea agreement and the plea hearing belie Alama's allegations that her conduct was innocent.  Alama stipulated and agreed that "she voluntarily, knowingly, and intentionally distributed oxycodone, namely by writing for her patients oxycodone

---

[2] The United States has not provided any reason for the defects in Rivers's declaration. Indeed, it is hard to imagine what circumstances would justify a declaration that is so far out of conformance with the rules.  The United States sought – and the Court granted – two motions for extension of time to file a response.  (1st Mot. for Extension of Time, Dec. 1, 2017, Docket No. 49; Order Granting Mot. for Extension, Dec. 4, 2017, Docket No. 52; 2d Mot. for Extension of Time, Jan. 10, 2018, Docket No. 53; Order Granting 2d Mot. for Extension, Jan. 12, 2018, Docket No. 54.)  As such, the United States had nearly three months to obtain a conforming declaration from Rivers.  Furthermore, the United States should be aware of the requirements for filing such a declaration, as should Rivers.

prescriptions in a manner other than for a legitimate medical purpose and not in the usual course of professional practice." (Plea ¶ 2(c).) Alama agreed that her conduct was voluntary, knowing, and intentional. She agreed that she prescribed oxycodone for reasons other than medical purposes. Alama also agreed that common practice within the medical community was to discontinue prescriptions when urine test results indicated diversion or abuse of pills. (*Id.* ¶ 2(d)-(e).) She agreed that she continued to provide prescriptions after her patients failed drug tests, violating the usual course of professional conduct. (*Id.* ¶ 2(d)-(f).) During the change-of-plea hearing before the Court, Alama explicitly acknowledged that she knew that these actions violated her duties. (Plea Hearing Tr. Excerpt ("Tr.") at 2-4, July 12, 2018, Docket No. 66.)

Even if Alama's allegations were not contradicted by the record, she fails to allege facts that would entitle her to relief. While the CDC recommendations cited by Alama recommend continuing to treat patients who fail urine tests, that recommendation exists within a broader policy to prevent drug abuse and includes various considerations and steps to take to address addiction when a patient fails a drug test. (Def.'s Supp. Mem., Ex. C at 3, Nov. 8, 2017, Docket No. 45.) Alama does not allege specific facts demonstrating that her decision to continue treating patients who failed urine tests was made in good faith, in consideration of all the facts before her, and in conjunction with steps to treat addiction. Her assertion that she was innocent is conclusory and unsupported by specific facts. As such, she is not entitled to relief on these allegations.

Alama's "good faith" defense is also conclusory and contradicted by the record. In her plea agreement, Alama agreed that she knowingly and voluntarily prescribed opioids

7

in a manner that was inconsistent with legitimate health needs and professional norms. (Plea ¶ 2.) At her plea hearing, the Court specifically asked Alama about her understanding of professional norms and her understanding of the illegality of her actions, and Alama acknowledged that she knew her conduct was illegal and a violation of her duty.[3] As such, Alama is not entitled to relief based on these allegations.

### B. Charge Void for Vagueness

Alama argues that the charges against her are unconstitutionally vague, but she provides no support for her argument. Alama alleges that DEA agents told her she was not violating any laws and that she did not receive any official training in prescribing practices. But neither of these factual allegations make the statute under which she was charged unconstitutionally vague. Furthermore, courts have consistently found that the Controlled Substances Act is not unconstitutionally vague even though it does not define the bounds of professional practice. *United States v. Birbragher*, 576 F. Supp. 2d 1000, 1012 (N.D. Iowa 2008) (collecting cases). Alama's counsel was not ineffective for failing to pursue this argument. *See Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994). Even taking her allegations as true, Alama is not entitled to relief.

---

[3] The Court asked Alama whether she knew that she was not supposed to prescribe oxycodone to people who tested positive for use of drugs, and Alama answered, "Yes, I did know that." (Tr. at 2.) The Court then asked her whether she "knew it was a violation of [her] duty to give [patients] pills when they tested positive for other types of illegal drugs," and Alama answered affirmatively. (*Id.* at 3.) The Court also asked: "[T]here was no question in your mind that this was something you should not have been doing, correct, at the time?" (*Id.* at 4.) Alama again answered, "Yes." (*Id.*)

### C. FOIA Waiver

Alama argues that her counsel was ineffective in allowing the government to include a FOIA waiver in her plea agreement because such a waiver indicates that the government committed a *Brady* violation. The Court rejects this allegation as conclusory. While the Court disfavors the inclusion of FOIA waivers in plea agreements, their inclusion does not inherently indicate that the government committed a *Brady* violation. Discovery waivers – including FOIA waivers – are common in modern plea agreements. Susan R. Klein et al., *Waiving the Criminal Justice System: An Empirical and Constitutional Analysis*, 52 AM. CRIM. L. REV. 73, 85 (2015). For example, a recent study found that about 25% of plea agreements in 2009 contained a discovery waiver and 27% of robbery plea agreements contained a FOIA waiver. *Id.* Given their prominence, Alama's counsel did not perform below an objective standard of reasonableness for not contesting the FOIA waiver. Thus, Alama is not entitled to relief on these allegations.

### D. Insufficient Investigation

Alama argues that her counsel failed to conduct a proper investigation because he did not contact two medical practitioners whose affidavits demonstrate her innocence. Alama included these affidavits in support of her Section 2255 Motion.

Alama's argument fails under both prongs of *Strickland*. As to reasonableness, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. When examining counsel's decision to not investigate further, the court must consider the amount

of evidence known to counsel and whether that evidence would reasonably demand that an attorney investigate more. *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). Counsel receives a high level of deference on their investigation decisions. *Id.* at 521-22. Alama's argument fails because she does not allege that she informed her counsel that her actions were within professional norms, that she told her counsel that witnesses could have testified as such, or that she gave her counsel any information about these witnesses. Alama's counsel's failure to contact witnesses that he was not aware of was not unreasonable.

As to prejudice, it is not reasonably probable that the outcome of Alama's case would have been different had her counsel contacted these two medical professionals because neither affidavit is exculpatory.

Dr. Joseph Sierra states that, during the time that Alama was practicing, "most aspects of prescribing were based largely on provider discretion and information gathered during the provider's consultations with each individual patient. There was no single, authoritative guideline for the prescribing of opioids." (Def.'s Supp. Mem. Ex. D.) But "provider discretion" does not mean that any decision made by a licensed provider is immune from legal scrutiny. Even if prescribing was subject to some discretion, Alama does not allege that she exercised her discretion in line with professional norms, or consistent with legitimate medical purposes, or even that she continued prescribing based on information gathered in her consultations. In fact, in her plea agreement and at her plea hearing she explicitly admitted that she prescribed opioids outside the bounds of professional norms and not for legitimate medical reasons.

Gretchen Zachel, a physician assistant that Alama worked with at the Pain Relief Centers of Minnesota ("PRCM"), states that "[d]uring [her] time at PRCM, there was not a program in place to train employees on prescribing practices," that "physician providers did not require direct oversight in prescribing," and that "whether to prescribe narcotics and how much to prescribe [was] left up to each provider's discretion." (Def.'s Supp. Mem. Ex. E ¶¶ 1-3.) She also states that providers would use the urine drug screens "as one piece of information in the decision whether to prescribe." (*Id.* ¶ 4.) None of these statements are exculpatory. Whether PRCM had a program in place to train employees and whether physicians had oversight over prescribing practices are irrelevant. Alama had a duty under the law to prescribe in accordance with professional norms and for legitimate medical treatment. Alama does not allege that she considered the drug screens but decided to prescribe opioids anyway based on other information and for legitimate medical reasons. Indeed, she admitted in her plea agreement and hearing that she prescribed opioids other than for legitimate medical reasons.

Because counsel's conduct was neither unreasonable nor prejudicial, Alama is not entitled to relief based on these allegations.

### E. Consequences of a Guilty Plea

Alama argues that her counsel was ineffective because he misrepresented the consequences of her guilty plea. She alleges that her counsel told her she would only receive probation if she pled guilty, but she would likely go to prison if she went to trial. Alama alleges that she acted in good faith when prescribing opioids but pled guilty anyway

11

to avoid a prison sentence. According to Alama, had she known that a plea would result in a prison sentence, she would have taken her case to trial to try and prove her innocence.

Alama's allegations do not entitle her to relief because they are conclusory, unsupported by specifics, and directly contradicted by the record. *See Blackledge*, 431 U.S. at 74. Alama acknowledges that her plea agreement set forth a maximum term of imprisonment of 20 years and a possible guideline range for the offense of either 57-71 or 70-87 months imprisonment. (Plea ¶¶ 5(a), 7(g).) Furthermore, at her change-of-plea hearing, Alama testified under oath that her guilty plea was voluntary and that no one made any promises to her to get her to plead guilty, other than those contained in the plea agreement. (Tr. at 9-10.) She also testified that she was aware of the guidelines, the statutory maximum, and the court's discretion in sentencing her. (*Id.* at 5-7.) Alama's allegations are not sufficiently specific or supported to overcome the fact that they directly contradict her sworn testimony during the change-of-plea hearing. *See United States v. Rodriguez*, No. 11-205, 2013 WL 6328853, at *2 (D. Minn. Dec. 5, 2013); *see also United States v. Cole*, 389 F. App'x 565, 566 (8th Cir. 2010). As such, Alama is not entitled to relief based on these allegations.

### F. Selective Prosecution

Alama argues that her trial counsel was ineffective for failing to argue that the government selectively prosecuted her. She alleges that Dr. Bangston, Dr. Romano, and Dr. Thorson were not prosecuted even though they prescribed drugs in a similar manner.

According to Alama, the only differences between her and them are gender and occupation; she is a female nurse practitioner, and they are male physicians.

Barring constitutional restraints, the government possesses "'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). To show selective prosecution, Alama must demonstrate that the government based its prosecution decision on constitutionally impermissible grounds. *United States v. Kelley*, 152 F.3d 881, 886 (8th Cir. 1998).[4] A petitioner must meet a heavy burden, demonstrating that the government's decision to prosecute had a discriminatory motivation. *Wayte*, 470 U.S. at 608.

Alama fails to allege facts that show that the United States based its decision to prosecute her on constitutionally impermissibly grounds. Specifically, she has not provided any support for her allegation that the decision to prosecute her was motivated by her gender. Because Alama's selective-prosecution argument lacks merit, her counsel cannot be found ineffective for failing to raise it. *See Dyer*, 23 F.3d at 1426.

### G. Downward Departure

Alama argues that her counsel provided ineffective assistance because he failed to move for a downward departure based on substantial assistance under U.S.S.G. § 5K1.1. Alama also alleges that the United States did not file a substantial assistance motion as promised due to unconstitutional discrimination and bad faith. Alama's arguments fail.

---

[4] She must also show that the government singled her out for prosecution compared to other similarly situated individuals. *Kelley*, 152 F.3d at 886.

As to Alama's counsel, he was not ineffective for failing move for a downward departure under U.S.S.G. § 5K1.1 because only the United States may make such a motion. *See* U.S.S.G. § 5K1.1.

As to the United States, Section 5K1.1 requires the United States to file such a motion only if the plea agreement stipulates it. *United States v. Wolf*, 270 F.3d 1188, 1190 (8th Cir. 2001). Otherwise, the United States receives deference regarding its "evaluation of the quantity and quality of a defendant's assistance." *United States v. Moeller*, 383 F.3d 710, 713 (8th Cir. 2004). The Court may review the United States' decision only if a defendant makes a substantial threshold showing that the prosecution based its decision on unconstitutional grounds or bad faith. *Wolf,* 270 F.3d at 1190. To make such a showing, a defendant must make more than generalized allegations of improper motive. *Moeller,* 383 F.3d at 713. An evidentiary hearing is not warranted based merely on defendant's claims that he or she provided substantial assistance. *Id.*

Here, Alama's plea agreement did not stipulate that the government would move for a downward departure. She alleges that she provided substantial assistance relating to another nurse practitioner, but her allegations are insufficient to warrant an evidentiary hearing. The United States had the discretion to determine whether the information she provided warranted moving for a downward departure. The remainder of Alama's allegations are conclusory. She offers no support for her allegation that the United States based its decision to investigate her on her gender or as a personal favor. Indeed, the majority of her allegations indicate only that her physician colleagues – not the United States – acted vindictively. Alama's counsel was not ineffective for failing to raise this

meritless argument, *see Dyer*, 23 F.3d at 1426, and her allegations are insufficient to warrant relief.

## IV. CERTIFICATE OF APPEALABILITY

A district court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson,* 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings. *Flieger v. Delo,* 16 F.3d 878, 882–83 (8th Cir. 1994). The Court finds it unlikely that another court would decide the issues raised in Alama's motion differently. The Court concludes that Alama has failed to make the required substantial showing of the denial of a constitutional right and will therefore not grant a certificate of appealability.

## V. MOTION TO FILE SUPPLEMENTAL PROCEEDING

Alama also moves to file supplemental proceedings to show that the United States' response misrepresented the dates that her clinic was open based on information provided by Rivers's declaration. Because the Court did not consider Rivers' declaration in deciding Alama's Section 2255 motion and the information referenced in the motion is not material to this Court's decision, the Court will deny Alama's motion as moot.

**ORDER**

Based on the foregoing, and all the records, files and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Alama's Motion to Strike the Declaration of Attorney Bruce Rivers [Docket No. 62] is **DENIED**.

2. Alama's Motion for Leave to File Supplemental Pleadings [Docket No. 64] is **DENIED.**

3. Alama's 28 U.S.C. § 2255 Motion [Docket No. 44] is **DENIED**.

4. The Court **DENIES** a Certificate of Appealability.

5. This case is **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 24, 2018            _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                      Chief Judge
                                     United States District Court